## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TOURAJ ZAKERI,

        *Plaintiff*,

    v.

        Civil Action No. 23-3162 (TJK)

ANTONY J. BLINKEN et al.,

        *Defendants*.

### MEMORANDUM

In August 2022, Plaintiff applied for a tourist visa to visit the United States. Two months later, he interviewed with a consular officer. His application was then refused and placed in administrative processing. A year after his interview, Plaintiff sued several U.S. Government officials, alleging that he has waited too long for an adjudication. Defendants move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. The Court lacks subject-matter jurisdiction over claims against some Defendants and will dismiss them for that reason. As for the claims that remain, Plaintiff's allegations fail to state a claim for unreasonable delay. Thus, the Court will grant Defendants' motion and dismiss the case.

## I.    Background

According to his complaint, Plaintiff was born in Iran and is a Canadian citizen. ECF No. 2 ¶ 8. In June 2022, he tried to board a flight from Calgary to the United States. *Id.* ¶ 13. But U.S. Customs and Border Protection informed him that he needed to provide evidence that he never served in the Islamic Revolutionary Guard Corps. *Id.* Several weeks later, Plaintiff returned to the airport with that evidence. *Id.* ¶ 14. After an interview, CBP told Plaintiff that he was

1

inadmissible to the United States as "an intending immigrant without an immigrant visa."[1]  *Id.*

¶ 16.  At that point, Plaintiff decided to apply for a tourist visa.[2]  *Id.* ¶ 17.  He submitted his Form

DS-160 on August 24, 2022.  ECF No. 2 ¶ 18.  On October 20, 2022, he appeared for an interview

with a consular officer at the U.S. Consulate in Calgary.  *Id.* ¶ 19.  His case was then refused and

placed in administrative processing.  *Id.* ¶ 20.

One year later, Plaintiff sued the Secretary of State, the Attorney General, and the Consul

General of the U.S. Consulate in Calgary.  *Id.* ¶¶ 9–11.  He alleges that he has been waiting too

long for an adjudication on his application, invoking both the Mandamus Act, 28 U.S.C. § 1361,

and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).  *See generally id.*  Defendants

move to dismiss for lack of subject-matter jurisdiction and failure to state a claim.

## II.   Legal Standards

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff must establish the Court's subject-

matter jurisdiction.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  When evaluating a Rule

---

[1] Plaintiff was apparently found inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *See* ECF No. 1-1 at 1 ("Subject appears to be inadmissible 212a7A1 Immigrant without an immigrant visa.").  That statute reads: "Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible."  8 U.S.C. § 1182(a)(7)(A)(i)(I).

[2] To obtain a tourist visa, an alien must show that he (1) intends to leave the United States at the end of his temporary stay, (2) has permission to enter a foreign country at the end of his temporary stay, and (3) has adequate financial arrangements to enable him to carry out the purpose of the visit to and departure from the United States.  *See* 22 C.F.R. § 41.31(a).  The alien must first submit an online Nonimmigrant Visa Application, or Form DS-160, and then appear before a consular officer for an interview.  22 C.F.R. § 41.103.  At the interview, the consular officer determines "the proper nonimmigrant classification" and the "alien's eligibility to receive a visa."  22 C.F.R. § 41.102(a).  The alien bears the burden of establishing eligibility.  8 U.S.C. § 1361.

12(b)(1) motion, the Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' . . . and upon such facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Without subject-matter jurisdiction over a claim, the Court must dismiss it.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Under Rule 12(b)(6), a defendant can move to dismiss an action for "failure to state a claim upon which relief can be granted."  To survive at this stage, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  Yet even assuming all the facts are true, the complaint has to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[M]ere conclusory statements" will not be enough to establish that a claim is plausible on its face.  *Iqbal*, 556 U.S. at 678.

## III.   Analysis

The Court has subject-matter jurisdiction over Plaintiff's claims of unreasonable delay in processing his visa application against the Consul General of the U.S. Consulate in Calgary, although not over those against the Attorney General and Secretary of State.  But he has failed to state a claim for unreasonable delay.  So while Defendants raise several other non-jurisdictional arguments for dismissal in their motion, the Court need not address them.  *See, e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 n.6 (D.D.C. 2021).

Case 1:23-cv-03162-TJK   Document 17   Filed 07/02/24   Page 4 of 11

**A.    Plaintiff Lacks Standing to Sue the Attorney General and Secretary of State**

Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), of which "the core component of standing is an essential and unchanging part," *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).   To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Standing "is not dispensed in gross." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (internal quotation marks omitted).  That is, standing "must be demonstrated for each claim against each defendant."  *Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-cv-807 (DLF), 2022 WL 424983, at *4 (D.D.C. Feb. 11, 2022).

Defendants argue that Plaintiff lacks standing because aliens have no right to a visa or to travel to the United States, and so Plaintiff has failed to plead a cognizable injury in fact.  As many judges in this District have found, they are mistaken.  True, when a plaintiff sues based on a "procedural injury," like an unreasonable delay, that harm "must be tethered to some concrete interest adversely affected by the procedural deprivation."  *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013).  But Plaintiff has made that showing.  Specifically, he alleges that he "has struggled with his business with being unable to visit the U.S. and this caused him a great amount of stress and anxiety."  ECF No. 2 ¶ 34.  And "monetary harm[]" relating to a business has been held to "readily qualify as [a] concrete injur[y] under Article III."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).  Other judges in this District have consistently held likewise in the visa-delay context.  *See, e.g.*, *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (holding that Iranian nationals' concrete professional and financial interests were sufficiently tethered to their procedural right to a reasonably expeditious agency

adjudication).

Defendants also argue that Plaintiff lacks standing to bring his claims against some of them specifically.  As noted above, to establish standing as to each defendant, Plaintiff must show that his injuries are "causal[ly] connect[ed]" to each defendant's conduct and "likely" can be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61.

The Court agrees that Plaintiff lacks standing to sue the Attorney General and the Secretary of State because he has failed to establish the causation and redressability prongs against these officials.  Beginning with the Attorney General, Plaintiff fails to "allege any involvement of . . . the Attorney General . . . with respect to [his] visa application[]." *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 75 (D.D.C. 2022) (dismissing Attorney General from immigration mandamus suit).  Thus, Plaintiff has failed to establish that "the disputed delay here is traceable to [any of] the Attorney General's actions." *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022).  Indeed, the parties have not brought to the Court's attention any similar visa case in which a court has held that a plaintiff had standing to sue the Attorney General.  And as for the Secretary of State, his role in the visa-adjudication process has been circumscribed by statute.  As the D.C. Circuit has held, the Immigration and Nationality Act ("INA") "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Id.* (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) and *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). "Because only the consular offices, and not the Department of State, can grant [Plaintiff's] application[] . . . [he] cannot show that his injury is redressable by the [Secretary of State]." *Siddiqui*,

646 F. Supp. 3d at 75.[3]

The Consul General is a different story.  Plaintiff alleges that she "is responsible for over-sight of all consular activities of the Consulate," including the processing of Plaintiff's visa appli-cation.  ECF No. 2 ¶ 10.  And unlike the Secretary of State, who has been statutorily excluded from the visa adjudication process, the Consul General may enforce duties relating to visa adjudi-cations because she "appear[s] to qualify as [a] 'commissioned consular officer[]' with authority over visa adjudications."  *Liew v. Sanders*, No. 24-cv-342 (TNM), 2024 WL 3026538, at *3 (D.D.C. June 17, 2024) (quoting 22 C.F.R. § 40.1(d); then citing 8 U.S.C. § 1104(a)).  Thus, a court order directed at the Consul General could redress Plaintiff's injuries.  And so Plaintiff has standing as to the Consul General.  *See Rashidian v. Garland*, No. 23-cv-1187 (ACR), 2024 WL 1076810, at *4 n.3 (D.D.C. Mar. 8, 2024) (finding standing as to consul general).[4]

---

[3] Plaintiff argues that the Secretary can redress his injury because "nothing . . . precludes the Secretary . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'"  *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (quoting 5 U.S.C. § 555(b)); *see* ECF No. 12 at 3.  But focusing on the statutory text, the Secretary is ex-pressly precluded from "those powers, duties, and functions . . . *relating to* the granting or refusal of visas," which would include administrative guidance for the pace of adjudicating visas or com-pleting administrative processing.  8 U.S.C. § 1104(a) (emphasis added).  Thus, the Secretary of State's ability to redress his alleged injury has been circumscribed by statute.

[4] Defendants also argue that the Court lacks subject-matter jurisdiction for another reason. They contend that the case is moot because Plaintiff's application has already been adjudicated and refused under INA § 221(g).  *See* ECF No. 11 at 21–23.  But Defendants' argument conflates standing with mootness.  "Standing 'assesses whether [a plaintiff's personal interest] exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings.'"  *Nepal v. U.S. Dep't of State*, 602 F. Supp. 3d 115, 123 (D.D.C. 2022) (quoting *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021)).  "A case is moot only 'if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 93 (D.D.C. 2020) (quoting *ABA v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011)).  And Defendants do not point to anything that has happened since this suit's filing to moot Plaintiff's legally cognizable interest in the completion of the administrative processing of his application.  *Cf. Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020).

### B.      Plaintiff Has Failed to State a Claim Against the Consul General for Unreasonable Delay Under the Mandamus Act or the APA

Plaintiff brings his unreasonable delay claims under the Mandamus Act, 28 U.S.C. § 1361, and § 706(1) of the APA.  *See* ECF No. 2 ¶¶ 21–37.  The Court applies the same legal standard to these claims.  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017).  In essence, the Court must determine "whether the agency's delay is so egregious as to warrant mandamus."  *In re Core Commc'ns, Inc.* 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted).

To help guide this inquiry, the D.C. Circuit has laid out a six-factor test:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay;

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed.

*Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up); *see also Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'"  *In re Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). Courts often address the factors by addressing them under "four basic inquiries."  *Rashidi v. U.S. Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023).

"First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)?  Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?  Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)?  Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?"

*Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (cleaned up).

### 1.    *TRAC* Factors 1 and 2

The first two TRAC factors are typically considered together.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  And the first is often considered the "most important."  *In re Core Commc'ns, Inc.,* 531 F.3d at 855.  These factors evaluate "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  "Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka*, 246 F. Supp. 3d at 153–54.  And because there is no "set timeline, the Court looks to case law for guidance."  *Dastagir*, 557 F. Supp. 3d at 165.[5]  In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay not unreasonable.  80 F.4th at 342.  And "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *5 (D.D.C. Feb. 15, 2024) (citation omitted).  Further, "delays of around two years are

---

[5] Plaintiff argues that 8 U.S.C. § 1571(b) supplies the relevant timetable.  *See* ECF No. 2 ¶ 33.  Not so.  That statute provides: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  "By its plain text, § 1571 applies to Immigration and Naturalization Service, not the State Department, and it governs 'immigration benefit application[s],' not the nonimmigrant visa application at issue here."  *Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *4 n.9 (D.D.C. Feb. 12, 2024). To the extent it has any impact on the first two factors—or the TRAC factors as whole—it does not tip them in in Plaintiff's favor.

usually considered reasonable." *Noori v. Blinken*, No. 23-cv-1463 (TJK), 2024 WL 939990, at *3 (D.D.C. Mar. 5, 2024); *see also Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."). Because "[c]ourts measure the period of delay from the last government action to the issuance of the opinion," *Nusrat*, 2022 WL 4103860, at *6 n.6, and Plaintiff's consular interview took place in October 2022, the delay here comes to about 20 months. As reflected above, that delay falls well within what courts in this jurisdiction have consistently determined not to be unreasonable. That is so even considering delays only in the nonimmigrant visa context. *See Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (holding that a 21-month delay in adjudicating a nonimmigrant visa was not unreasonable).[6] For these reasons, factors one and two, taken together, favor Defendants.

### 2. *TRAC* Factor 4

The fourth factor "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319. It examines the effect of expediting Plaintiff's application on the agency's other competing priorities. *TRAC*, 750 F.2d at 80. Courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "'no net gain'" in adjudications achieved. *Da Costa*, 80 F.4th at 343–

---

[6] Still, the Court may consider caselaw addressing delays in adjudicating nonimmigrant visa applications, like the one here, as well as immigrant visa applications. *See Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (declining to distinguish between treatment of immigrant and nonimmigrant visa applications).

44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d at 75).  That is exactly would happen here if Plaintiff receives his requested relief. Ordering consular officials to process his application on his preferred timeline would "necessarily require [the agency] to prioritize [his] application[] 'at the expense of other similarly situated applicants.'"  *Rashidi*, 2023 WL 6460030, at *5 (quoting *Da Costa*, 80 F.4th at 344).  And this "would erode the ability of agencies to determine their priorities."  *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021).  Factor four thus heavily favors Defendants.

### 3.   *TRAC* Factors 3 and 5

Factors three and five involve "the interests prejudiced by delay," including possible effects on "human health and welfare."  *TRAC*, 750 F.2d at 80; *see also Didban*, 435 F. Supp. 3d at 177 (considering the third and fifth factors in tandem).  Plaintiff alleges having suffered "immense" consequences.  ECF No. 2 ¶ 34.  He "has struggled with his business . . . and this has caused him a great amount of stress and anxiety."  *Id.*; *see also* ECF No. 12 at 2 (discussing Plaintiff's "mental anguish").  The Court is sympathetic to these hardships.  Yet Plaintiff is no different than many others in similar circumstances.  *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) ("While the Court does not doubt that [Plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances.").  "Thus, these factors largely do not weigh in Plaintiff['s] favor because there is no reason why [his] private interests in 'health and welfare' deserve special treatment relative to other visa applicants' interest in the same."  *Noori*, 2024 WL 939990, at *4.  And even if they do weigh in his favor to some extent, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'"  *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

### 4.   *TRAC* Factor 6

Factor six insists that a plaintiff need not show bad faith or impropriety on the part of the

agency to prevail on an unreasonable delay claim.  Plaintiff asserts that "the U.S. government has already issued an absurd finding of inadmissibility due to immigrant intent" and that this finding "is clearly a fig leaf to cover a discriminatory decision to not let someone of Iranian descent enter" the United States.  ECF No. 2 ¶ 36.  But Plaintiff alleges no specific facts in support of these accusations.  And in any event, he does not challenge the agency's inadmissibility finding, but the delay in completing further administrative processing.  So the Court assesses this factor as neutral. And even if it did weigh in Plaintiff's favor, it, too, would "not 'overcome the other factors that weigh strongly in the Government's favor.'"  *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

*   *   *

The Court takes notice of the "troubling backlog of petitions waiting for . . . adjudication." *Da Costa*, 80 F.4th at 344.  As the D.C. Circuit has noted, those problems are serious.  *Id.*  But after weighing all the TRAC factors, the Court has little difficulty concluding that Plaintiff has not stated a claim for unreasonable delay of adjudication of his visa application.  In fact—unfortunately—his wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021). In the end, delays "stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).  And Plaintiff offers no reason for the Court to bump him to the front of the line.

## IV.    Conclusion

For all the above reasons, the Court will grant Defendants' Motion to Dismiss, ECF No. 11, and dismiss the case.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 2, 2024